**Brian OLMSTEAD, Plaintiff and Appellee,**

v.

**FIRST INTERSTATE BANK OF FARGO, N.A., as Personal Representative of the Estate of Charles S. Miller, deceased, Defendant and Appellant.**

**Civ. No. 890137.**

Supreme Court of North Dakota.

Dec. 20, 1989.

Dickel, Johannson, Taylor & Rust by Richard C. Taylor, Crookston, Minn., James F. Dunn & Associates, St. Paul, Minnesota, for defendant and appellant; argued by James F. Dunn.

Garaas Law Firm, Fargo, for plaintiff and appellee; by Jonathan T. Garaas (argued) and David A. Garaas.

LEVINE, Justice.

This is an appeal from a judgment entered upon a jury verdict and from an order denying motions for a new trial and for judgment notwithstanding the verdict. We affirm.

Brian Olmstead was injured on September 21, 1980, when an automobile, driven by Charles Miller, crashed into the trailer home of Brian's brother as Brian was working on the roof of a shed attached to the mobile home. At the time of the accident, Miller was under the influence of alcohol and was speeding through the trailer park. Olmstead apparently suffered a minor compression fracture of the back when he fell through the roof of the shed. During the next five years, Olmstead, who had a pre-existing history of migraines, suffered recurrent headaches. His neurologist concluded that his longstanding migraine problem had become worse because of a myofascial syndrome which resulted from his injury.

Olmstead sued Miller in September 1986. The jury found Miller negligently caused Olmstead's injuries and awarded compensatory damages of $283,300 consisting of: $2,800 for past medical expenses, $17,500 for future medical expenses, $33,000 for loss of productive time, $20,000 for permanent disability, and $110,000 for pain, discomfort and mental anguish. The jury also awarded $100,000 in exemplary damages.

Miller appealed from a denial of his motions for judgment notwithstanding the verdict and for a new trial.[1]

Miller argues that a new trial should have been granted on four grounds: the evidence was insufficient to support the compensatory damages; the compensatory damages were excessive because they were influenced by passion or prejudice; the exemplary damages were excessive because they were influenced by passion or prejudice; and the exemplary damages were not supported by the evidence.

---

1. After filing the appeal, Miller died on May 17, 1989. First Interstate Bank of Fargo was appointed personal representative of Miller's estate and was substituted as defendant pursuant to Rule 43(a), NDRAppP.

■ Although Miller also complains about the denial of his motion for judgment notwithstanding the verdict, he has not briefed or argued this issue. Issues not briefed or argued are deemed abandoned. *See Martinson Bros. v. Hjellum,* 359 N.W.2d 865, 869 (N.D.1985). Accordingly, we decline to review the order denying judgment notwithstanding the verdict.

■ A new trial may be granted based either on excessive damages or insufficiency of the evidence. NDRCivP 59(b)(5), (6). An award of damages is excessive when the amount is so unreasonable as to indicate passion or prejudice on the part of the jury; or the award is so excessive as to be without support in the evidence; or the verdict is so excessive as to appear clearly arbitrary, unjust or such as to shock the judicial conscience. *Jim's Hot Shot Service, Inc. v. Continental Western Ins. Co.,* 353 N.W.2d 279, 281–82 (N.D.1984). In determining the sufficiency of the evidence to support the jury's award of damages, we view the evidence in the light most favorable to the verdict. *Holte v. Carl Albers, Inc.,* 370 N.W.2d 520, 527 (N.D.1985). Our review of the facts is limited to whether there is substantial evidence to sustain the verdict; if there is, we are bound by the verdict. *Johnson v. Monsanto Co.,* 303 N.W.2d 86, 91 (N.D.1981). The decision to grant or deny a new trial rests in the sound discretion of the trial court and will not be set aside on appeal unless there is an affirmative showing of manifest abuse of discretion. *Holte, supra,* 370 N.W.2d at 524. We have defined manifest abuse of discretion as "an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Id.*

## LOSS OF PRODUCTIVE TIME

■ The jury was instructed that loss of productive time included both loss of earnings and impairment of earning capacity. Loss of earnings is an element of special damages. *Spalding v. Loyland,* 132 N.W.2d 914, 924 (N.D.1965). Impairment of earning capacity is an item of general damages which can be inferred from the nature of the injury without proof of actual income after the injury. *Id.* Miller argues that it was error to combine elements of general and special damages on the verdict form. But Miller did not object to the form of the verdict in the court below. Consequently, he cannot raise the issue for the first time on appeal. *Hoerr v. Northfield Foundry & Mach. Co.,* 376 N.W.2d 323, 327 (N.D.1985).

Miller also claims that there was no evidence of impairment of Olmstead's future earning capacity and that evidence of his past and future wage loss was speculative. We disagree.

Olmstead testified that he was a self-employed sales representative for various clothing brands, covering a five-state area as a traveling salesman. He testified that his injuries affected his ability to do his job and that when his headaches beset him, he often took to his bed, unable to work. He estimated he lost twenty hours a week from work because of the injuries.

■ Miller argues that because there was no corroboration of Olmstead's testimony that he can now work only twenty hours per week, the damages awarded for loss of productive time were speculative. In Miller's opinion, Olmstead was required to produce employment records or the testimony of employers to substantiate his claim of loss of productive time. Miller refers us to *Boyles v. Bridgeman,* 342 So.2d 1150, 1152 (La.Ct.App.1977), for the proposition that it is error to award damages for loss of earnings based solely on plaintiff's testimony.

We do not believe that this corroboration "requirement" is a hard and fast rule even in Louisiana. Our reading of cases post-dating *Boyles* suggests that corroborative evidence of plaintiff's testimony of wage loss is merely a preference, not a requirement. *See Sherlock v. Berry,* 487 So.2d 555, 557 (La.Ct.App.1986) [lost wages claim sufficiently supported by plaintiff's testimony as to drop in income]; *Davis v. State Farm Mut. Auto. Ins. Co.,* 441 So.2d 18, 20 (La.Ct.App.1983) [plaintiff's failure to establish loss of wages with tax return or testimony of employer not fatal to claim for loss of wages]; *Green v. Superior Oil*

*Co.,* 441 So.2d 54, 56 (La.Ct.App.1983) [loss of earnings may be proved solely by plaintiff's own testimony, if plaintiff is considered credible by trier of fact].

Even if corroboration were required, it was provided by the introduction of Olmstead's tax returns for the years 1978–1987. Although the returns show increased income in several years following the accident, they also show a sharp drop in income in the last two years. This corresponds with the time during which Olmstead testified that his headaches had worsened.

Viewing the evidence in the light most favorable to the verdict, we cannot conclude that the jury acted upon insufficient evidence or awarded damages for loss of productive time that were so excessive as to have been influenced by passion or prejudice or to be without support in the evidence or that shock the judicial conscience.

### FUTURE MEDICAL EXPENSES

■ Miller argues that there was no evidence to establish with reasonable medical certainty the necessity or the reasonable cost of future medical expenses.

To recover future medical expenses, the plaintiff has the burden of showing "substantial evidence to establish with reasonable medical certainty that such future medical services are necessary." *Erdmann v. Thomas,* 446 N.W.2d 245, 247 (N.D.1989); *Olmstead v. Miller,* 383 N.W.2d 817, 822 (N.D.1986); *South v. National R.R. Passenger Corp.,* 290 N.W.2d 819, 842 (N.D.1980).

In *South,* we allowed the jury to infer the need for nursing care based on a physician's testimony that the plaintiff's condition was permanent and would worsen. *South, supra.* In that case, there was testimony from an economist as to the cost of future nursing services. Here, there was medical testimony regarding both the permanence of the mixed headache problem and the likelihood Olmstead would require drug therapy for the rest of his life. This evidence established with reasonable medical certainty that future medical services were necessary. Although the expert

witness did not testify as to the likely cost of future drug therapy, past drug bills were introduced. From this evidence the jury could infer the reasonable cost of future drug therapy. *See Frahm v. Carlson,* 214 Neb. 532, 334 N.W.2d 795, 799 (1983) [evidence of past medical expenses were competent proof on issue of future medical expenses]. We conclude that the evidence was sufficient to establish both the need for and cost of future medical treatment.

### PAIN, DISCOMFORT AND MENTAL ANGUISH

■ Miller attacks the sufficiency of the evidence to support the award for pain, discomfort and mental anguish. However, Miller did not raise this issue in his motion for a new trial or judgment notwithstanding the verdict. A party is limited on appeal to a review of the issues presented to the trial court. *Andrews v. O'Hearn,* 387 N.W.2d 716, 728 (N.D.1986).

We therefore decline to review the propriety of this award.

### PERMANENT DISABILITY

Miller argues that the award for permanent disability should be reversed because only speculative medical testimony connected the probability of future headaches to the accident and the expert witnesses were unable to separate the pre-existing migraine problem from the post-accident condition. We disagree.

■ A tortfeasor takes his victim as he finds him. *Priel v. R.E.D., Inc.,* 392 N.W.2d 65, 69 (N.D.1986). Where a defendant's negligence aggravates a pre-existing injury, the defendant must compensate the victim for the full extent of the aggravation but is not liable for the pre-existing condition itself. *See Moser v. Wilhelm,* 300 N.W.2d 840, 844 (N.D.1980); 3 L. Frumer, *Personal Injury,* § 6.01 at 522.

■ Dr. Ivers testified that the muscle injury received in the accident triggers Olmstead's migraine problem, which in turn aggravates his neck and back problem, creating a cycle of pain. Therefore,

the medical opinion establishes a connection between the injury received in the accident and the exacerbation of migraine headaches. *Compare Wisdom v. Henderson*, 98 Idaho 45, 557 P.2d 1118 (1976) [damages for aggravation of migraines properly denied where medical evidence didn't support claim of aggravation]. It also establishes the permanence of the headache problem. Although Dr. Ivers was unable to apportion Olmstead's headache problem between his genetic tendency toward migraines and the post-traumatic myofascial syndrome he suffered as a result of the accident, Olmstead's genetic predisposition to migraines does not bar recovery if the jury finds permanent disability which is causally related to Miller's negligence. *See Priel, supra.* Negligence and proximate causation are questions of fact. *Id.* The jury was properly instructed on causation, aggravation of pre-existing injury and permanent disability. From the evidence, the jury could have found that there was a causal relationship between Miller's negligence and the aggravation of Olmstead's migraines and that the exacerbated condition was a permanent disability. We cannot conclude that the jury's award for permanent disability is unsupported by the evidence.

### EXEMPLARY DAMAGES

Miller challenges the exemplary damages award as excessive and unsupported by the evidence.

■ First, he contends that when the culpable conduct is subject to criminal sanctions, the criminal sanctions are relevant for determining whether an amount awarded as exemplary damages is excessive. As a result of the accident which injured Olmstead, Miller was prosecuted for driving under the influence of alcohol, paid a $500 fine and underwent a court-ordered alcohol treatment program. He urges that an exemplary damages award of $100,000 is clearly excessive where the criminal penalty for the underlying conduct is only $500.

Like a criminal sanction, the purpose of awarding exemplary damages is to punish the wrongdoing defendant in order to deter him, and others, from repetition of the wrongful conduct. *See Dahlen v. Landis*, 314 N.W.2d 63, 68 (N.D.1981). We have recognized that "[a]n amount sufficient to serve this purpose in one instance might be wholly inadequate in another." *Neidhardt v. Siverts*, 103 N.W.2d 97, 103 (N.D.1960).

Even if the extent of a criminal penalty may be relevant in determining the reasonableness of the award of exemplary damages, the criminal penalty is but one factor to be considered. *See Puz v. McDonald*, 140 Ariz. 77, 680 P.2d 213, 214–15 (Ct.App. 1984); *Anderson v. Amundson*, 354 N.W.2d 895, 899 (Minn.Ct.App.1984); *Fahrenberg v. Tengel*, 96 Wis.2d 211, 291 N.W.2d 516, 527 (1980); *Calero v. Del Chemical Corp.*, 68 Wis.2d 487, 228 N.W.2d 737, 750 (1975). There is no mathematical formula against which we measure the reasonableness of an award.

We will not overturn an exemplary damages award as excessive absent passion or prejudice on the part of the jury. *See Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 754 (N.D.1989). Passion means that the jury was motivated by feelings or emotions rather than by the evidence. *Nelson v. Trinity Medical Center*, 419 N.W.2d 886, 894 (N.D.1988). Prejudice includes forming an opinion without due knowledge or examination. *Id.*

We believe the jury acted not from passion or prejudice, but rather, upon the evidence. Here, the evidence established the existence of aggravating circumstances surrounding Miller's tortious conduct which the jury could consider in fashioning an award which would punish Miller and serve as a deterrent to him and others. *See Stoner, supra,* 446 N.W.2d at 754. At the time of the accident, Miller's blood alcohol content was 0.24, almost two and one-half times the legal limit. *See* NDCC § 39–08–01. Although the posted speed limit in the trailer park where the collision occurred was 10 miles per hour, the evidence showed that Miller was traveling far in excess of that speed. The force of the collision buried his station wagon under the frame of a mobile home which had been anchored to the ground. There was also

evidence that Miller had a history of alcoholism dating back to World War II and that he continued to drink despite the accident and despite completing a court-ordered treatment program. In light of the nature of Miller's conduct and in light of the purposes of awarding exemplary damages, we conclude the exemplary damages award is not excessive. The amount of the award rests in the sound discretion of the jury. *Dahlen, supra,* 314 N.W.2d at 69.

Miller also argues that the exemplary damages were unsupported by the evidence because Olmstead introduced evidence of Miller's financial condition at the time of the accident, which was eight years prior to trial, rather than evidence of his wealth at the time of trial.

As Miller acknowledges, there is no requirement that evidence of defendant's wealth be introduced in order to support an award of exemplary damages. *See Tice v. Mandel,* 76 N.W.2d 124, 137 (N.D.1956); 22 Am.Jur.2d *Damages* § 953 at 987. If evidence of defendant's wealth is introduced, the defendant may counter with evidence tending to show his impecunity. *Tice, supra.* Evidence of defendant's financial condition need not be limited to the time of trial. 22 Am.Jur.2d *Damages* § 953 at 988. *See Welty v. Heggy,* 145 Wis.2d 828, 429 N.W.2d 546, 549 (Ct. App.1988); *Kearney v. Kansas Public Serv. Co.,* 233 Kan. 492, 665 P.2d 757, 769 (1983); *Dalton v. Meister,* 52 Wis.2d 173, 188 N.W.2d 494, 499 (1971).

Miller did not object to Olmstead's evidence of Miller's earnings and standing in the community as of the time of the accident. Nor did he attempt to counter that evidence with evidence of his current financial condition. Apparently, as a trial tactic, Miller chose not to disclose his financial status at the time of trial. He cannot now complain that his chosen tactic constitutes reversible error.

Because we have concluded that there was sufficient evidence to support the damage awards and that the awards were not excessive, we hold that the trial court did not abuse its discretion in denying Miller's

motion for a new trial. Accordingly, we affirm.

ERICKSTAD, C.J., VANDE WALLE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.