**Deborha Ryberg SMITH, Plaintiff and Appellee,**

v.

**Dennette L. ANDERSON, Defendant and Appellant.**

**Civ. No. 880381.**

Supreme Court of North Dakota.

Jan. 25, 1990.

Mackenzie, Jungroth, Mackenzie & Reisnour, James A. Reisnour (argued), Jamestown, for plaintiff and appellee.

Morley & Morley, Ltd., Patrick J. Mastel (argued), Grand Forks, for defendant and appellant.

GIERKE, Justice.

The defendant, Dennette L. Anderson, appealed from an order denying her motion for a new trial and from a judgment entered after a jury awarded the plaintiff, Deborah Ryberg Smith, $44,523.20. We affirm.

On November 14, 1985, Smith was riding in a car driven by Anderson when the car hit a light pole in Jamestown. As a result of the accident, Smith sustained the injuries which are the subject matter of this litigation. Anderson admitted liability, but contested the extent of Smith's injuries. A jury returned a verdict awarding Smith $5,832 for future medical expenses; $15,-000 for future pain, discomfort and mental anguish; $23,691.20 for permanent disability; and nothing for past pain, discomfort and mental anguish. The trial court denied Anderson's motion for a new trial, and she has appealed.

■ One of the bases of Anderson's motion for a new trial was that the trial court erred in denying her motion for a mistrial. Anderson's motion for a mistrial was based on a reference to insurance by Smith's treating chiropractor, Dr. Gerald Harbaugh, during direct examination by Smith's counsel:

"Q [Mr. Reisnour] Now when you presented this diagnosis, doctor, are there any numerical classifications that can be placed on this that are recognized by the United States government?

"A [Dr. Harbaugh] I guess I don't understand.

"Q Well, does the United States government provide for a numerical classification of an injury of this nature?

"A Yes, it's an IDCA number.

"Q What do you mean by IDCA number?

"A International Classifications of Diseases and all insurance companies and workman's compensation, social services, welfare, all require these numbers when you make a diagnosis.

"Q And could you give for the members of the jury the various numbers that are involved here, and if you're referring to something, doctor, could you please tell us what it is?

"A Okay, this is a—this is what we use to fill out insurance work, I guess it's just an insurance report and the—

"Q Would you just provide me, please, the numbers.

"A Okay. The numbers a sprain/strain is 847.0, subluxation is 839.0, cervical subluxation and strain with radiculitis and paresthesia is 723.3, headache is 739.0.

"Q How long have these numerical definitions for your diagnosis been used, if you know?

"A Over five years."

After Dr. Harbaugh finished testifying, Anderson moved for a mistrial out of the presence of the jury, contending that Dr. Harbaugh's testimony implicated that she had liability insurance for the accident because the numerical classifications were used in reports to insurance companies. The trial court denied Anderson's motion, citing *Smith v. Knutson*, 78 N.D. 43, 47 N.W.2d 537 (1951).

On appeal, Anderson argues that *Smith v. Knutson, supra*, has been overruled by *Neibauer v. Well*, 319 N.W.2d 143 (N.D. 1982). She asserts that the jury could have inferred from Dr. Harbaugh's testimony that he used the numerical classifications in reports to her insurance company. She contends that Dr. Harbaugh's testimony improperly and prejudicially injected her liability insurance into this case.

In *Smith v. Knutson, supra*, a negligence action, this court held that no prejudicial error occurred when a prospective juror voluntarily stated during voir dire that she understood that in "this type of case there was usually insurance." After

the prospective juror's comment, the defendants asked the trial court to allow them to inform the jury that they did not have insurance. The trial court denied the defendants' request.

In *Smith, supra*, 47 N.W.2d at 540, this court said that "[o]rdinarily voluntary, unresponsive, incidental statements of this kind are held to be an exception to the general rule prohibiting improper reference to insurance," and that "[a] reference to insurance which leaves in doubt what kind of insurance or whose insurance is meant is generally regarded as harmless." In concluding that the reference to insurance was not prejudicial, we noted that the "remark of the juror was not a direct statement that there was insurance involved in *this* particular case." *Id.* [Emphasis added]. We further held that the trial court did not err in refusing to instruct the jury that the defendants did not have liability insurance because that instruction would have been a direct statement about the involvement of insurance in that case.

In *Neibauer v. Well, supra*, we affirmed a trial court's order granting a motion for a new trial which was based on the trial court's determination that a reference to insurance made during the trial was prejudicial. The trial court had concluded that the practical effect of the testimony was to inform the jury that the defendant in that case had liability insurance. We noted that in *Smith* the prospective juror's reference to insurance

"did not constitute evidentiary testimony in the case and could not have been understood as implying that either party had liability insurance. Those factors were more important than the inadvertent nature of the reference." *Neibauer v. Well, supra*, 319 N.W.2d at 145.

*Neibauer* is consistent with *Smith*. In both cases the focus was on whether the reference to insurance informed the jury that either party to the respective lawsuit had liability insurance. That focus has been a common thread throughout these types of cases.[1] *See Priel v. R.E.D., Inc.*,

---

1. That rationale follows the dictates of Rule 411, N.D.R.Ev., that "[e]vidence that a person was or

392 N.W.2d 65 (N.D.1986) [trial court erred in denying new trial where counsel's closing argument implied that a defendant was not insured]; *Andersen v. Teamsters Local 116 Building Club, Inc.*, 347 N.W.2d 309 (N.D.1984) [trial court did not err in refusing to grant a mistrial where the reference to insurance did not imply that either party had insurance or that the witness was referring to a particular party or a special type of insurance]; *Kresel v. Giese*, 231 N.W.2d 780 (N.D.1975) [trial court did not err in refusing to allow defendant to introduce evidence that he did not have liability insurance]; *Bischoff v. Koenig*, 100 N.W.2d 159 (N.D.1959) [trial court erred in denying new trial where the plaintiff testified on direct examination that his wife's funeral and burial expenses were paid by the defendant's insurance].

In this case, the reference to insurance did not imply that either party to the lawsuit did or did not have liability insurance. Compare *Priel, supra,* and *Neibauer, supra,* with *Andersen, supra.* Neither did the reference to insurance imply that Dr. Harbaugh was referring to a particular party or a special type of insurance. *Andersen, supra; Smith, supra.* We conclude that the trial court did not err in denying Andersen's request for a mistrial.[2]

■ Relying on *Olmstead v. Miller*, 383 N.W.2d 817 (N.D.1986), Anderson argues that the trial court erred in instructing the jury on future medical expenses because there was not "substantial evidence" to establish "with reasonable medical certainty" that Smith needed future medical services. She argues that the evidence established nothing more than a "mere possibility" that Smith would need future medical treatment and that the jury's award of $5,832 for future medical expenses was speculative. We disagree.

In *Olmstead, supra,* 383 N.W.2d at 822, we said

"in order for a plaintiff to recover for future medical services there must be 'substantial evidence to establish with reasonable medical certainty that such future medical services are necessary.' *South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 842 (N.D.1980). Damages based on the mere possibility of future medical treatment will not be allowed. *Holecek v. Janke*, 171 N.W.2d 94 (N.D.1969)."

In this case Dr. Harbaugh, Smith's treating chiropractor, testified that, based on a reasonable degree of certainty, Smith was "going to require some chiropractic care on a needs care basis." Dr. Harbaugh further testified that Smith would need monthly chiropractic adjustments and that he currently charged $18 per adjustment. Dr. Kent Yohe, a chiropractor, testified by deposition that, based upon a reasonable degree of certainty, future chiropractic care was necessary for Smith. Although there was contrary evidence about the necessity for these future medical services, we believe the testimony of Dr. Harbaugh and Dr. Yohe constitutes substantial evidence warranting an instruction to the jury on that issue.

■ Anderson also contends that the trial court erred in refusing to give her requested jury instruction on failure to mitigate damages from the first paragraph of North Dakota Pattern Jury Instruction 1290:

"It is the duty of a person who has been injured in his person ... to exercise ordinary care to avoid loss or minimize the resulting damages. If he fails to do so, he cannot recover damages for any injury that could have been prevented by the exercise of ordinary care."

was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully."

**2.** Although the trial court referred to the "inadvertent" aspect of *Smith* in initially denying Anderson's request for a mistrial, the court's decision is sustainable because the reference to insurance did not imply that either party to the lawsuit did or did not have liability insurance. We do not reverse a proper judgment because the trial court's reasoning in arriving at the judgment was incorrect if the results are the same for appropriate reasons. *E.g. Radspinner v. Charlesworth*, 369 N.W.2d 109 (N.D.1985).

Relying on evidence that Smith injured herself parasailing in 1987 and that she played softball after the car accident, Anderson contends that that instruction should have been given because, by engaging in those activities, Smith did not exercise ordinary care to avoid loss or minimize the resulting damages.

■ In reviewing the propriety of jury instructions, it is well established that the instructions must be considered as a whole. *E.g. Fronk v. Meager*, 417 N.W.2d 807 (N.D.1987). When considered as a whole, the instructions must fairly and adequately advise the jury on the applicable law. *Id.* If the instructions, read as a whole, fairly and adequately advise the jury on the relevant issues, it is not error to refuse to give a requested instruction on those issues. *Gajewski v. Bratcher*, 307 N.W.2d 826 (N.D.1981).

Although Anderson's argument is framed in terms of failure to mitigate or minimize damages, her argument is essentially that Smith's injuries were caused by other activities occurring after the car accident. In this case the trial court instructed the jury, in substance, that it was required to determine whether Smith's injuries, if any, were proximately caused by the car accident and, if so, the amount of damages to which Smith was entitled. The jury was instructed that the measure of damages is the amount that will compensate for all damages proximately caused by the car accident and that before a person is liable for negligence, that negligence must have been a proximate cause of the injury. The jury was also instructed on the definition of proximate cause and on Smith's burden to prove that her injuries were proximately caused by the car accident.

We believe that the jury instructions, read as a whole, fairly and adequately advised the jury that, if it believed that any of Smith's injuries were proximately caused by other activities after the accident, damages were not recoverable for those injuries. We therefore conclude that the trial court did not err in refusing to give the requested jury instruction.

■ Anderson contends that the trial court erred in denying her motion for a new trial under Rule 59(b)(5), N.D.R.Civ.P., because the damages were clearly excessive and were under the influence of passion and prejudice.

A motion for a new trial under Rule 59(b)(5), N.D.R.Civ.P. is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Cook v. Stenslie*, 251 N.W.2d 393 (N.D.1977); *Schan v. Howard Sober, Inc.*, 216 N.W.2d 793 (N.D.1974). A trial court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably. *Irgens v. Mobil Oil Corp.*, 442 N.W.2d 223 (N.D.1989).

In *Cook v. Stenslie, supra*, 251 N.W.2d at 396, we outlined our standard for these types of challenges:

"Where the motion is based upon an excessive verdict influenced by passion or prejudice, the standard for what constitutes an excessive verdict varies but generally includes one or more of the following: the amount is so unreasonable and extreme as to indicate passion or prejudice on the part of the jury, ... the award is so excessive as to be without support in the evidence, ... the jury verdict is so excessive as to appear clearly arbitrary, unjust, or such as to shock the judicial conscience.... If the trial court, based on all the evidence and proceedings before it, found any of these, it did not abuse its discretion in granting a new trial." [Citations omitted].

In this case Smith, who was twenty-five years old at the time of the accident and had a life expectancy of 54.9 years, hit her head on the side window and windshield of the car during the accident. After the accident she had headaches and back and neck stiffness. Smith testified that she experienced pain after the accident and that her activities were restricted. Dr. Harbaugh, her attending chiropractor, described her injuries as a misalignment of the bony surfaces of her neck and back, which is called a subluxation. Dr. Harbaugh testified that Smith sustained permanent injuries as a result of the car acci-

dent. Dr. Yohe testified that the accident caused a stretching and tearing of the muscles that hold the spine and attach it to the head. Dr. Yohe further testified that Smith had a 10% permanent impairment of her whole body.

After reviewing the evidence, we cannot say that the jury verdict of $44,523.20 was so unreasonable and extreme as to indicate passion and prejudice on the part of the jury, or was so excessive as to be without support in the evidence, or was so excessive as to appear clearly arbitrary, unjust or such as to shock judicial conscience. We conclude that the trial court did not abuse its discretion in denying Anderson's motion for a new trial on the grounds of passion or prejudice.

█ Anderson also contends that the trial court erred in failing to grant her a new trial because the jury verdict was inconsistent and perverse. She asserts the verdict cannot be reconciled because the entire verdict was for future damages with nothing for past damages despite evidence that Smith's condition was worse right after the accident and was improving until the time of trial.

Anderson's argument ignores that the jury was instructed not to consider past medical treatment in awarding damages. Additionally, the instruction on damages for permanent disability allowed the jury to award damages for "permanent injuries or lasting impairment of health ... for the disabling effect of the injury, past or prospective." Moreover, the instruction on damages for pain, discomfort, and mental anguish suffered by Smith was specifically limited to the "future." Under these instructions,[3] the jury verdict was entirely consistent and reconcilable with the jury instructions. We conclude that the trial court did not abuse its discretion in denying Anderson's motion for a new trial.

The judgment and the order denying Anderson's motion for a new trial are affirmed.

**3.** On appeal no issue has been raised about the propriety of those instructions. Unless there is an objection, jury instructions become the law of the case. *Grenz v. Kelsch,* 436 N.W.2d 552 (N.D.1989).

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.