Ricky James WANNER, a.k.a. Rick J. Wanner, Plaintiff and Appellee,

v.

GETTER TRUCKING, INC., Defendant and Appellant.

Civ. No. 900285.

Supreme Court of North Dakota.

March 5, 1991.

Douglas W. Rennie of Montgomery, Rennie & Johnson, Cincinnati, Ohio, for defendant and appellant.  Appearance by Fred E. Whisenand, Jr., of McIntee & Whisenand, Williston.

Vince H. Ficek of Ficek Law Office, Dickinson, and Dale W. Moench of Evans & Moench, Bismarck, for plaintiff and appellee.

VANDE WALLE, Justice.

This is an appeal by the defendant, Getter Trucking, Inc., from a judgment of the District Court for McKenzie County entered on a jury verdict awarding the plaintiff, Rick Wanner, $700,000 for injuries proximately caused by the defendant's negligence and from an order denying its motion for judgment notwithstanding the verdict or a new trial. We affirm.

Rick Wanner was injured in a fall from an oil derrick. At the time of the accident, Wanner was employed as a floorhand for Dual Drilling, an oil drilling company. Upon completion of a drilling project, Dual contracted with Getter Trucking for the transport of a derrick to another site. Because the derrick was being transported only a short distance, a "field move" was employed wherein the derrick is moved cross-country while left intact.

In preparation for the field move, the derrick was placed in a horizontal position. As part of the preparation, a crane, owned by Getter and operated by one of its employees, was used to hoist a travelling block assembly inside the derrick in order to secure it to the "top" of the horizontal derrick. The travelling block assembly consists of a travelling block connected by a joint or "knuckle" to a swivel hook. The entire assembly weighs 12,000 to 14,000 pounds. In order to secure the assembly to the derrick, Dual employees, Wanner and Ben Andreas, positioned themselves on top of the horizontal derrick. While the crane held the assembly in position to be secured by the Dual employees, the hook portion of the assembly shifted downward and the derrick vibrated. Wanner, who was standing on a six-to-eight-inch-wide beam on top of the derrick lost his balance and fell approximately thirty feet, landing headfirst on an outrigger of the crane.

Wanner filed suit against Getter Trucking, alleging that Getter's employees had negligently rigged and hoisted the travelling block assembly, thereby allowing the assembly to shift and causing the derrick to vibrate. The jury returned a special verdict finding no negligence on the part of Wanner, assigning ninety percent of the negligence to Getter, and ten percent of the negligence to "others." The jury awarded Wanner $700,000 in damages.

■ Getter raises several issues on appeal, the primary issue being whether the trial court abused its discretion in allowing William Bateman to testify as an expert witness. Rule 702, N.D.R.Ev., governs the admissibility of expert testimony and provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The two-part test for the admission of expert testimony is "whether or not such testimony will assist the trier of fact and whether or not the witness is qualified as an expert." *Patch v. Sebelius*, 349 N.W.2d 637, 643 (N.D.1984). The determination of whether or not to admit expert testimony rests with the sound discretion of the trial court, and will not be reversed on appeal unless the trial court has abused its discretion. *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155 (N.D.1985).

■ Getter asserts that Bateman was improperly allowed to present expert testimony on three subjects which did not assist the trier of fact. First, Bateman was allowed to give an opinion on the cause of the accident. Bateman testified that the derrick was shaken by the shifting assembly thereby causing Wanner to fall. Getter contends that this point was not contested, and therefore Bateman's testimony could not have assisted the jury. Bateman expanded on that testimony, however, by expressing the opinion that inverted mud [1] on

---

1. According to the testimony of Ben Andreas,

inverted mud is a mixture of diesel fuel and

Wanner's boots did not cause him to slip from the derrick, a point which was apparently contested. While part of his testimony may have been repetitious, Bateman did provide information on the cause of the fall which could have assisted the trier of fact.

■ Second, Bateman was allowed to testify that the method used by Getter to hoist the assembly was not the safest method available.[2] Getter argues that the fact that there was a safer method was irrelevent until there was evidence that Getter violated an applicable standard of care. The question of a safer, alternative method may be considered by the jury, however, in determining whether the method actually used was reasonably safe and whether there were other methods which could have been used. *Welsh v. Burlington Northern R.R. Co.*, 719 S.W.2d 793 (Mo.App.1986). Bateman's testimony did not operate to increase the duty to which Getter was already bound but merely went to the question of reasonable care under the circumstances. *See Wilhelm v. Detroit Edison Co.*, 56 Mich.App. 116, 224 N.W.2d 289 (1974).[3] Whether a person of ordinary prudence would utilize a particular method for hoisting the assembly may depend upon the existence of viable alternative methods. The jury was entitled to hear evidence of safer methods in order to make a determination of whether or not a person of ordinary prudence would utilize the particular method utilized by Getter in rigging and hoisting the assembly.

■ Finally, Getter asserts that Bateman's testimony regarding the "standard of care" in North Dakota should not have been permitted. When asked by Getter's attorney on cross-examination about the applicable "standard of care," Bateman testified that "the standard of care would be

that you would want to do whatever task you're doing so as to minimize, if not eliminate, the possibility of harming someone or damaging equipment." Getter argues that this standard is erroneous and the effect of permitting this testimony was to unduly prejudice Getter.

Bateman's testimony may have been erroneous but it was fully responsive to a clear question asked by Getter's counsel. Neither party objected to nor made a motion to strike the testimony. Getter's counsel asked a dangerous question on cross-examination and cannot now ask this court to retract the question simply because it did not elicit the desired response. *See State v. Haselhorst*, 218 Neb. 233, 353 N.W.2d 7 (1984). The jury was properly instructed on the applicable standard of care thereby minimizing the possibility of any prejudice.

Getter next asserts that Bateman was not qualified to provide expert testimony, regardless of whether such testimony assisted the trier of fact. Getter argues that Bateman should not have been permitted to testify that there were safer methods for rigging the travelling block assembly because he had never seen a crane actually hoist an assembly nor had he seen the actual travelling block assembly or derrick involved in this case.

■ We have noted in previous cases that Rule 702 permits a generous allowance of the use of expert testimony. *See Oberlander v. Oberlander*, 460 N.W.2d 400 (N.D.1990); *Stein v. Olhauser*, 211 N.W.2d 737 (N.D.1973). A witness may be qualified as an expert by knowledge, skill, experience, training, or education. Rule 702, N.D.R.Ev. Bateman had a Bachelor of Science degree in mechanical engineering. He had worked for Shell Oil Company for twenty-five years, and had worked as a

earth and is used in the drilling process.

**2.** There were apparently several lift strategies available to hoist the assembly inside the derrick. Getter attempted the lift with two supporting slings attached to the block assembly. Bateman testified that it would have been safer to use three slings.

**3.** The jury was provided with an instruction on ordinary negligence which contained the requi-

site standard of care. The instruction provided, in part:

"'Ordinary negligence' is the lack of ordinary care and diligence required by the circumstances. Ordinary care or diligence means such care as a person of ordinary prudence usually exercises about his own affairs of ordinary importance."

consulting engineer for eleven years. Bateman was a "certified safety professional" and a member of several safety and engineering societies. Bateman is also a licensed professional engineer in Texas and California. Although Bateman was not familiar with the rigging procedure for a travelling block assembly prior to the commencement of this action, after studying depositions, accident investigation reports, photographs, crane safety manuals and other materials, he was able to form the opinion that Getter did not use the safest available method. Getter was given the opportunity to argue that the basis for this opinion was weak, but that argument goes to the credibility of the opinion-giver, not the admissibility of the opinion. *See Victory Park Apartments, Inc. v. Axelson, supra.* We cannot say that the trial court abused its discretion by allowing Bateman to provide expert testimony.

■ The second issue raised by Getter is whether the jury's assignment of negligence was clearly against the greater weight of the evidence. The existence of negligence is a question of fact, to be determined by the finder of fact, unless the evidence is such that reasonable minds could draw but one conclusion. *Leno v. Ehli,* 339 N.W.2d 92 (N.D.1983). Getter asserts that Wanner's behavior in walking along the top of the derrick was so dangerous that it constituted negligence as a matter of law. Therefore, Getter argues, the jury finding of no negligence on the part of Wanner was against the weight of evidence and the trial court's denial of its motion for a new trial was an abuse of discretion.

■ Wanner's behavior in walking along the top of the derrick, however, did not constitute negligence as a matter of law. Getter erroneously equates working in a "dangerous" situation with behavior constituting negligence as a matter of law. While there was some testimony that Wanner could have placed himself in a safer position while securing the assembly, such testimony does not indicate that he was

acting in a negligent manner by walking on top of the derrick. There was also testimony that rig-hands commonly walked on top of the derrick. Evidence of custom may be used as evidence that conduct meets the standard of reasonable care under the circumstances. *Tom Beuchler Const. v. Williston,* 392 N.W.2d 403 (N.D.1986).[4] Given evidence of this custom, it was not unreasonable for the jury to determine that Wanner's behavior met the standard of reasonable care as he positioned himself to secure the assembly. The jury heard ample evidence which indicated that Getter employees were responsible for rigging and hoisting the travelling block assembly and that the rigging somehow failed, thereby causing the accident. Therefore, we cannot say that the jury's assignment of negligence was against the greater weight of the evidence and thus the trial court was under no obligation to order a new trial.

■ The third issue raised by Getter is whether the amount of the damage award demonstrates that the jury was influenced by passion and prejudice. An award of damages is excessive and justifies granting a new trial when the amount is so unreasonable as to indicate passion or prejudice on the part of the jury. *Olmstead v. First Interstate Bank of Fargo,* 449 N.W.2d 804 (N.D.1989). Passion means motivation by emotions while prejudice means formation of an opinion without due knowledge. *Olmstead, supra.* Getter has not demonstrated that the jury was influenced by either passion or prejudice.

Wanner's injury has resulted in a thirty-four percent permanent disability. He has suffered permanent injury to his bladder and bowels. He has undergone several surgeries and was in a body cast for more than six months. He is unable to remain sitting, standing, or lying for any length of time without suffering some discomfort. He is precluded from conducting many normal daily tasks which require some manual labor. Although the $700,000 awarded is a considerable sum, in light of the evidence

---

**4.** However, evidence of custom is not admissible to establish an absolute standard of care upon which the issue of negligence can be determined. *Besette v. Enderlin School Dist. No. 22,* 310 N.W.2d 759 (N.D.1981).

of the seriousness of Wanner's injuries it is not so unreasonable as to indicate passion or prejudice on the part of the jury.

The final issue raised by Getter is whether the trial court abused its discretion by refusing to give an instruction on "unavoidable accident." Getter's requested instruction provided:

"You are instructed that an unavoidable accident is an occurrence not contemplated by either party, which occurs without fault or negligence of either party. In the event that a party is injured in an unavoidable accident, as herein defined, he has no right to recover damages from any other party to the accident, since the law requires that a person be injured by the fault or negligence of another, as a prerequisite to any right to damages."

Getter argues that the effect of failing to give this instruction was to convey the message that someone was at fault simply because an accident occurred.

If instructions read as a whole, adequately advise the jury on all relevent issues, it is not error to refuse to give additional requested instruction on those issues. *Smith v. Anderson,* 451 N.W.2d 108 (N.D.1990). The jury was instructed that "[b]efore a person can be held responsible for negligence ... his negligence must have been a *proximate* cause of the injury. [Emphasis in the instruction.]" The jury was also instructed that "[t]he Plaintiff, in maintaining an action against the Defendant, has the burden of proving the essential elements of his claim by the greater weight of the evidence." These instructions, when read with the other instructions as a whole, clearly indicate that Getter could not be held liable for Wanner's injuries simply because an accident occurred. Getter's requested instruction was to some degree superfluous and would not necessarily add to the understanding of the jury. Therefore, the trial court did not err in failing to give the requested instruction.

The judgment of the trial court and the order denying Getter's motion for judgment notwithstanding the verdict or a new trial are hereby affirmed.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, concurring specially.

I write specially to confirm my understanding that questions of doubt about the admissibility of expert testimony generally should be resolved in favor of letting it in. That is so because the purpose of the rules of evidence is "to make it easier for expert witnesses to educate the trier about a body of knowledge that may be unfamiliar to the lay person." J. Weinstein, M. Berger, *Weinstein's Evidence Manual* § 13.01 (1990) (expert witnesses). Doubts about the usefulness of expert testimony thus should be resolved in favor of admissibility "unless there are strong factors such as incredibility, time or surprise favoring exclusion." *Id.* § 13.02[02] at 13–8.

Obviously, the danger of expert testimony admitted willy-nilly is that it will simply be used to evaluate the commonplace and supplant a jury's independent exercise of common sense. *See, e.g., Scott v. Sears Roebuck & Co.,* 789 F.2d 1052, 1055 (4th Cir.1986). However, protection against that hazard is squarely in the hands of the trial judge and, absent what amounts to egregious error, the trial judge's decision should stand.

While an opinion that merely tells jurors what result to reach is not helpful, *e.g., Kostelecky v. NL Acme Tool/NL Industries, Inc.,* 837 F.2d 828, 830 (8th Cir.1988), I agree with the majority that, here, Bateman did assist the trier on the subjects of cause and methodology. *Cf. M.C. Carlisle & Co. v. Cross,* 386 F.2d 672, 676 (1st Cir.1967); *Lanza v. Poretti,* 537 F.Supp. 777, 785–86 (E.D.Pa.1982) (expert permitted to eliminate possible causes of fire since he expressed opinion with reasonable degree of scientific certainty which aided trier in determining what did not cause fire).

Accordingly, I concur.