**COLORADO MILLING AND ELEVATOR COMPANY, a corporation, Appellant,**

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a corporation, Appellee.**

**No. 17812.**

United States Court of Appeals
Eighth Circuit.

Sept. 8, 1965.

Rehearing Denied Oct. 6, 1965.

John J. Cole, of Heneghan, Roberts & Cole, St. Louis, Mo., for appellant.

Robert C. Ely, of Schwartz & Ely, St. Louis, Mo., Lyman J. Bishop, St. Louis, Mo., for appellee.

Before VOGEL, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Terminal Railroad Association of St. Louis (Railroad) brought this action against Colorado Milling and Elevator Company (Industry) for reimbursement of an amount paid pursuant to a judgment obtained against it by an Industry employee. Recovery was claimed under the indemnity provisions of a side track agreement.[1] The Industry employee, Leeman C. Hahn, was injured because of the inefficient hand brake of the boxcar on which he was working.

The boxcar had been received in interchange by Railroad from the Missouri Pacific and spotted on the Industry track for unloading. It was filled with wheat consigned to Industry. Industry unloaded the contents into receiving pits by means of a "shaker" mechanism installed on one of the Industry tracks.[2] The boxcar was then nudged by a trackmobile to start its movement towards a point where

---

[1] The side track agreement contains many of the usual hold harmless provisions but the pertinent provision of the agreement reads:

"In the event that at any time the 'Industry', its servants or employes, shall move any car or cars set on the 'Industrial Track', the 'Industry' shall be solely liable for all the consequences, and shall defend and save harmless the 'Railroad' from all injury to persons resulting in death, or otherwise, and from all damage to property in any manner howsoever occasioned by, or arising out of such movement or movements of cars by the 'Industry', whether caused directly by such movement or movements, or resulting therefrom by reason of failure of such car or cars after having been moved by the 'Industry' to properly clear the adjoining tracks or trains, engines, or cars on such adjoining tracks, or persons riding on such trains, engines and cars, or otherwise howsoever."

[2] A more detailed description of the shaker mechanism, the interchange procedure, the track locations, and the accident is contained in the Missouri Supreme Court opinion. Hahn v. Terminal R. Ass'n., 355 S.W.2d 867 (Mo.1962).

it would again be picked up by Railroad. Hahn was positioned on a platform at the brake end of the car for the purpose of controlling its speed and thereby coupling it with a stationary cut of cars already emptied. With this movement, Hahn turned the brake wheel five or six times to remove the slack. As the boxcar attained its customary speed of about four to six miles per hour, Hahn endeavored to tighten the brakes to effectuate a proper coupling. After winding the wheel some eighteen to twenty-five times, the brake did not respond and the boxcar collided with the standing cars, throwing Hahn off and resulting in his injury.

Hahn sued the Railroad, alleging a violation of the Federal Safety Appliance Act, 45 U.S.C.A. §§ 1–16, and was successful.[3] Hahn v. Terminal R. Ass'n., supra. Industry was requested to defend the action but refused, denying liability under the indemnity provisions of the agreement. Hahn's case was tried and decided on a violation of the Safety Appliance Act with the trial court refusing even to admit evidence of common law negligence.

Industry thereafter declined to reimburse the Railroad and this action was instituted. The case was brought in state court and removed on diversity grounds to the United States District Court for the Eastern District of Missouri. A jury was waived and the District Court decided in favor of the Railroad and entered judgment in the amount sued for. We affirm.

Industry's primary attack is leveled at the District Court's ruling that the evidence failed to show any negligence by the Railroad.[4] It is first contended that under both Missouri and federal law a violation of the Safety Appliance Act constitutes "negligence" or "negligence per se." Indeed, some courts have used such terms in referring to violations of the Act, but the Supreme Court has made it implicitly clear that a violation of the Act is a breach of an absolute duty imposed by statute rather than negligence. This duty cannot be avoided by a showing of care—or a freedom from negligence, as the term is ordinarily used. Generally, actionable negligence presupposes fault which constitutes at least a part of the proximate cause of the resulting injury. In contrast, liability for breach of a statutory duty such as here involved is imposed irrespective of negligence which may or may not exist.

In discussing the absolute duty demanded by the Act, the Supreme Court said in Myers v. Reading Co., 331 U.S.

---

3. Specifically, Hahn's action was under § 11 which provides:

   "*It shall be unlawful for any common carrier* subject to the provisions of sections 11–16 of this title *to haul, or permit to be hauled or used on its line, any car* subject to the provisions of said sections *not equipped with* appliances provided for in said sections, to wit: All cars must be equipped with secure sill steps and *efficient hand brakes;* all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure handholds or grab irons on their roofs at the tops of such ladders: *Provided,* That in the loading and hauling of long commodities, requiring more than one car, the hand brakes may be omitted on all save one of the cars while they are thus combined for such purpose." (Emphasis supplied)

4. Finding of Fact No. 6:

   "*The evidence before the Court in this case fails to show negligence of plaintiff Terminal Railroad as a cause of the injury to Leeman C. Hahn.* The evidence indicated that a defect in the hand brake could positively be discovered only by having a manual test of the brake by turning the brake wheel a number of complete turns and that such a test might be effective only if made while the car was in motion. The evidence shows that a visual inspection is the customary form of inspection required by railroads in the St. Louis area, and the method customarily used by Terminal Railroad. The Court finds that reasonable care does not require plaintiff to inspect a car placed on the 'Industrial Track' by climbing the car and manually testing the brake wheel while the car is in motion." (Emphasis supplied)

477, 482–483, 67 S.Ct. 1334, 1338, 91 L.Ed. 1615 (1947):

"Here it is not necessary to find negligence. A railroad subject to the Safety Appliance Acts may be found liable if the jury reasonably can infer from the evidence merely that the hand brake which caused the injuries was on a car which the railroad was then using on its line, in interstate commerce, and that the brake was not an 'efficient' hand brake."

The Court also quoted from the earlier case of Brady v. Terminal R. Ass'n, 303 U.S. 10, 15, 58 S.Ct. 426, 429, 82 L.Ed. 614 (1938):

"The statutory liability is not based upon the carrier's negligence. The duty imposed is an absolute one, and the carrier is not excused by any showing of care, however assiduous."

In O'Donnell v. Elgin, J. & E. Ry., 338 U.S. 384, 390, 70 S.Ct. 200, 204, 94 L.Ed. 187 (1949), attention was called to the fact that the Court had earlier "swept all issues of negligence out of cases under the Safety Appliance Act"; and in Carter v. Atlanta & St. Andrews Bay Ry., 338 U.S. 430, 433–434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949), the Court expressed that "[t]his Court has repeatedly attempted to make clear that this is an absolute duty not based upon negligence * * *." Regarding the "normal efficiency" of the appliance in an action under the Safety Appliance Act, the Court stated in Affolder v. New York, C. & St. L. R. R., 339 U.S. 96, 98, 70 S.Ct. 509, 510, 94 L.Ed. 683 (1950), that "the duty under the Acts is not based on the negligence of the carrier but is an absolute one requiring performance 'on the occasion in question.' "

Thus, the ruling of the Supreme Court conclusively indicates that a violation of the Safety Appliance Act does not imply that negligence, as that term is commonly used, was involved. Since negligence was not an issue in the Hahn case, supra, it follows that the Railroad does not stand convicted of negligence merely because of evidence of a violation of an absolute statutory duty.[5]

In a pretrial memorandum filed as a basis for denying motions of both parties for summary judgment, the District Court ruled that while proof of negligence was not a necessary element to recovery under the Safety Appliance Act, the Railroad "might be precluded from indemnification by [Industry] under the contract" by a showing that the inefficient operation of the appliance was in fact a result of Railroad's negligence, and not merely a matter of statutory liability. Thereupon, Industry locks on the argument that the Railroad was guilty of common law negligence in not furnishing it a reasonably safe car and in failing to make such an inspection as would disclose the defective condition of the hand brake.

The thrust of this contention is that Railroad's visual inspection of the hand brake apparatus, conducted from the ground, cannot reasonably be expected to reveal defects. Industry's expert testified that if the hand wheel was turned as many as twenty to twenty-five times without any braking action, there was a malfunction in the hand brake mechanism and that with respect to that brake, it had no braking action at all.[6] However, the hand wheel on a properly functioning brake cannot be turned more than twelve revolutions. The resulting expertise was that the failure here was necessarily in the chain at a point approximately twelve feet above the ground

---

5. The parties stipulated "that the case of Leeman C. Hahn v. Terminal Railroad Association of St. Louis * * * was submitted and tried upon the theory of a violation of § 11 of the Safety Appliance Act, * * * even though defendant [Industry] asserted a reservation as to whether the * * * Act technically confers such a right of action."

6. As previously noted Hahn testified that in attempting to slow the car, he wound the brake wheel eighteen to twenty-five times without any braking effect.

*or* in the gear housing unit which is located atop the car immediately behind the hand brake wheel and which is completely enclosed. Only a defect in the chain would be detectable by visual inspection, while all other defects causing this type malfunction would be located inside the enclosed housing unit. In either event, all possible defects responsible for such a failure are more reasonably detectable by tightening the brake wheel twelve turns rather than walking beside the car and merely looking at the mechanism.

The Railroad admitted that no more than a visual inspection had been made of the hand brake apparatus. The housing had not been disassembled nor had an employee climbed on top of the car and wound the hand brake twelve times. It did not discover by visual inspection any defect or the car would have been "bad ordered" and sent to the rip track for repair. If any defect had been discovered, a report would have been filed reflecting the "bad order." No such report was filed although exception had been taken to a car in the same consignment from the inbound road.

■ The practice of other railroads in the St. Louis area is to make only a visual inspection of "hand brakes, safety appliances and under frames in the cars, running gear and undersils [sic]." Such inspections at interchange do not include climbing on the cars to set the hand brakes as such a requirement would greatly increase the number of car inspectors needed, and would greatly impede the movement of cars and trains through the terminal. An operational inspection at interchange is beyond the scope of that function and is not practical. See Lowden v. Hanson, 134 F.2d 348 (8th Cir.1943); Canadian Northern Ry. v. Senske, 201 F. 637 (8th Cir. 1912); Waddell v. A. Guthrie & Co., 45 F.2d 977 (10th Cir. 1930); Shankweiler v. Baltimore & O. R. R., 148 F. 195 (6th Cir. 1906).

The record contains no evidence of the nature of the defect in the hand brake or whether in fact it was defective at all other than its failure to function on one occasion after it had been delivered to and moved by the Industry. Furthermore, the evidence does not show when the defect, if any, would become ascertainable by any kind of inspection. It is not known whether the defect occurred before or after the car was spotted on Industry's track, although their expert was of the opinion that the shaking operation utilized by Industry to unload the car did not damage the brake mechanism and cause its malfunction. We think it possible, as did the District Court, that the brake defect could have arisen after the inspection by Railroad and after delivery to Industry. There is no evidence to the contrary.

■ It is strongly urged that this evidence did not justify the Court's conclusion that Industry had failed to discharge its burden of proving negligence on the part of the Railroad. We disagree. The question of negligence is usually one of fact for the court and jury and not one of law. United States Rubber Co. v. Bauer, 319 F.2d 463 (8th Cir. 1963); United States v. Stoppelmann, 266 F.2d 13 (8th Cir. 1959); Westborough Country Club v. Palmer, 204 F.2d 143 (8th Cir. 1953); Consolidated Elec. Co-op. v. Panhandle E. Pipeline Co., 189 F.2d 777 (8th Cir. 1951).

■ The findings of the District Court are presumptively correct and must be sustained unless clearly erroneous. As a reviewing court, we are not privileged to substitute our judgment for that of the District Court and must view the evidence favorably to the successful party. And if the District Court's findings are supported by substantial, competent evidence, they must be sustained. Fremont Cake & Meal Co. v. Wilson & Co., 183 F.2d 57 (8th Cir. 1950); Federal Sav. & Loan Ins. Corp. v. First Nat'l. Bank, 164 F.2d 929 (8th Cir. 1947); F. W. Fitch Co. v. Camille, Inc., 106 F.2d 635 (8th Cir. 1939).

■ Issue is made of the Court's statements in its Finding No. 6 that the "evidence shows that a visual inspection

is a customary form of inspection required by railroads in the area and the method customarily used by Terminal Railroad." We agree with Industry that compliance with a custom will not alone suffice to justify a conclusion of non-negligence on the part of the Railroad, but disagree with the contention that the evidence was not competent and should have been excluded. This Court and others have many times held that proof of custom while relevant and admissible in evidence of negligence is not conclusive thereof. Sears, Roebuck & Co. v. Daniels, 299 F.2d 154 (8th Cir. 1962); City of Richmond v. Atlantic Co., 273 F.2d 902 (4th Cir. 1960); Young v. Aeroil Products Co., 248 F.2d 185 (9th Cir. 1957); Northwest Airlines v. Glenn L. Martin Co., 224 F.2d 120, 50 A.L.R.2d 882 (6th Cir. 1955), cert. denied, 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818 (1956). The Court's conclusion here was not grounded on custom alone but is amply justified by the record evidence.

A canvassing of the narrative record evidence does not substantiate the District Court's statement that a manual turning of the brake wheel would have to be performed on a moving car to be effective. This statement, if erroneous, is not vital to the basic conclusion that the record evidence failed to show negligence on the part of the Railroad. The Supreme Court in Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937) stated:

> "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason."

See also Lum Wan v. Esperdy, 321 F.2d 123, 126 (2nd Cir. 1963).

We have considered Industry's subsidiary allegations of error directed to the District Court's analysis of Hahn. Our examination of these claims shows them to be without merit.

Finally, Industry urges that public policy forbids a party to contract against liability based on its own negligence. The short answer is that the District Court properly held that Industry failed to discharge its burden of proving negligence on the part of Railroad. The Missouri court holds, as do most courts, that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts where such intention is not plainly expressed in the contract. As was held in Buckeye Cotton Oil Co. v. Louisville & N. R. R., 24 F.2d 347, 348 (6th Cir. 1928) and quoted in Terminal R. Ass'n v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693, 697 (1944):

> "There was no rule of public policy which forbade the railroad company from contracting with the oil company for indemnity against any damages which the railroad might be required to pay as the result of the ordinary negligence of its employees in operating engines and cars on these tracks."

In the instant case, the evidence was undisputed that local tariffs provide that the Railroad shall make a charge when it moves cars in intra-plant switching movements. No charge is levied if the Industry makes the move itself. Industry here moved the car first by use of the trackmobile and then by gravity after it was unloaded, and the Railroad made no charges for such movement. The Railroad in contracting for the indemnity did not contract against its liability. It was liable for Hahn's injury but there is no reason why it could not contract with the Industry to indemnify itself against the occurrence of any such loss while the car was being moved by Industry. This contract was made by the Railroad in its private capacity rather than as a common carrier and it could, therefore, relieve itself by indemnity, not only for its own negligence if the contract was sufficiently specific, but also against absolute liability as imposed by the statute.

In holding a contract releasing a railroad from liability not void as against public policy, notwithstanding a statute

imposing absolute liability, the Court in Sunlight Carbon Co. v. St. Louis & S. F. R.R., 15 F.2d 802, 805 (8th Cir. 1926), said:

"* * * on principle we perceive no reason why a railroad company may not, when acting in its private capacity, relieve itself from absolute liability imposed by statute as well as from liability resulting from negligence. The reasoning justifying the rule in the latter case is equally applicable to the former."

See Miller & Co. of Birmingham v. Louisville & N. R.R., 328 F.2d 73, 78 (5th Cir. 1964), cert. denied, 377 U.S. 966, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964).

The Railroad questions the correctness of the District Court's holding that the provisions of the contract were not so definite and specific as to provide indemnity for liability based on negligence. We have heretofore indicated agreement with the District Court's conclusion that there was no evidence of negligence shown. It would serve no useful purpose to discuss this challenged conclusion for even if we agreed with the Railroad's interpretation, it would only serve as an additional ground for affirmance.

The judgment is affirmed.