MINEX RESOURCES, INC.,
Plaintiff and Appellee,

v.

Robert MORLAND, as Special Administrator of the Estate of Kathleen O'Connell, Defendant, Third–Party Plaintiff and Appellee,

v.

PATRICK PETROLEUM CORPORATION OF MICHIGAN, a foreign corporation, Third–Party Defendant and Appellant,

and

Petrotech, Inc., a foreign corporation, Third–Party Defendant and Appellee.

MINEX RESOURCES, INC.,
Plaintiff and Appellee,

v.

Robert MORLAND, as Special Administrator of the Estate of Kathleen O'Connell, Defendant, Third–Party Plaintiff and Appellant,

v.

PATRICK PETROLEUM CORPORATION OF MICHIGAN, a foreign corporation, and Petrotech, Inc., a foreign corporation, Third–Party Defendants and Appellees.

Civ. Nos. 930099, 930107.

Supreme Court of North Dakota.

June 15, 1994.

Michael J. Maus of Howe, Hardy, Galloway & Maus, PC, Dickinson, for plaintiff and appellee Minex Resources, Inc.

David F. Senn of Baird & Senn, Dickinson, for third-party defendant and appellee Petrotech, Inc.

James D. Geyer of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for defendant, third-party plaintiff, appellee and appellant Robert Morland.

·Eugene F. Buresh of Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for third-party defendant, appellant and appellee Patrick Petroleum Corp.

VANDE WALLE, Chief Justice.

Robert Morland, as special administrator of the Estate of Kathleen O'Connell [the Estate], appealed from a judgment ordering the Estate to indemnify Minex Resources, Inc. [Minex] for operating expenses on an oil and gas well. Patrick Petroleum Corporation of Michigan [Patrick] appealed from a judgment ordering it to indemnify the Estate for the expenses owed to Minex, and ordering it to indemnify Petrotech, Inc., for attorney's fees and costs incurred in this litigation. We affirm.

On August 7, 1978, Kathleen O'Connell leased her mineral interests in two sections of land in Billings County to Patrick and retained a landowner's royalty. Patrick and Kathleen also entered into a letter agreement on that date, whereby Patrick agreed to assign to Kathleen a working interest equal to one-fourth of her mineral interest. The agreement further provided:

> "All operations on the Lease shall be conducted pursuant to the terms of the Joint Operating Agreement except that, notwithstanding anything in the Joint Operating Agreement to the contrary, Patrick shall be responsible for and pay all costs associated with drilling and abandoning or completing the first oil and gas well drilled on the lands covered by the Lease. The costs so payable by Patrick will include, but not be limited to, those required to plug, abandon and reclaim a dry hole and those required to render it capable of production, including installation of storage tanks, in the case of a producing well."

On November 16, 1978, Patrick and Kathleen executed an operating agreement and on January 9, 1979, Patrick made the assignment of the working interest as required by the letter agreement.

On April 12, 1979, the first producing well on the property was completed. Patrick paid

all expenses attributable to Kathleen's working interest through and after that date.

Kathleen died on March 15, 1983, and Allan Rustan was appointed personal representative of the Estate. To raise needed funds, Rustan decided to sell the Estate's working interests in six wells, including Mosser 1–26. The prospectus offering these interests for sale listed "expenses paid" on Mosser 1–26.

On August 23, 1983, Rustan executed a personal representative's deed conveying the interests to Minex. The deed provided, in pertinent part:

> "NOW, THEREFORE, Grantor ... does hereby grant, convey, transfer and sell to grantee all of the right, title and interest of said decedent and said estate in and to the following described real property situate in the County of Billings, State of North Dakota, to-wit: Grantor's working interest, from the surface of the earth to 100 feet below the stratigraphic equivalent of the total depth reached in the Mosser 1–26 well, in six producing oil and gas wells located in Sections 25 and 26, Township 141 North, Range 101 West, 5th P.M., described as follows:

| "Well Name | Operator | Net Revenue Interest | Working Interest |
|---|---|---|---|
| * | * | * | * |
| "Mosser 1–26 | Jerry Chambers Exp. | 1.904295% | –0–* |
| * | * | * | * |

> " *Grantor's share of costs on Mosser 1–26 are paid by the operator.
> "Grantor warrants to Grantee all of said property against every person lawfully claiming the same."

---

On August 8, 1983, Patrick had assigned its interest in the lease to Petrotech. Mosser 1–26 was being operated by Jerry Chambers Exploration [Chambers], and accounting and billing on the well was being handled by Axem Resources Incorporated [Axem].

Axem billed the Estate for operating expenses on Mosser 1–26 for August, September, and October, 1983. Rustan complained, and Axem, relying upon information from Patrick that it was obligated to pay the Estate's share, changed the billing to Patrick's assignee, Petrotech. A file memo dated November 11, 1983, by the Axem employee responsible for billing Mosser 1–26 indicates:

> "I spoke with Jim Kofakis at Patrick Petroleum this morning and he advised me that our APO billing interest to Kathleen O'Connell and Trinity Oil & Gas is not correct. The agreement Patrick had with them was to carry them on this well regardless of payout."

Axem subsequently revised the billing, with no part of the Mosser 1–26 expenses charged to the Estate or Minex. Petrotech paid the expenses until April 4, 1984, when it advised Chambers that all future expenses should be charged to Minex. Until that date, the expenses attributable to the working interest in question had at all times been paid by Patrick or Petrotech.

In September 1986 Chambers sued Minex and Petrotech to determine who was responsible for the disputed expenses. Minex unsuccessfully attempted to bring a third-party action against the Estate. On April 11, 1988, summary judgment was entered holding that Minex was responsible for all expenses incurred after the well was completed to productive status. Judgment was entered ordering Minex to pay $14,533.64, representing the share of operating expenses through trial, and further ordering Minex to pay all future expenses attributable to the working interest.

Minex brought this action against the Estate for $14,533.64 and indemnity of the future expenses it was ordered to pay in the prior judgment. The Estate brought third-

party actions against Patrick and Petrotech for indemnification if Minex prevailed against the Estate. Patrick counterclaimed against the Estate for expenses allegedly paid by mistake after completion of the well. Petrotech cross-claimed against Patrick for indemnity and attorney's fees based upon a hold-harmless clause in their agreement.

The case was tried to the court without a jury. The court admitted extrinsic evidence as to the meaning of the personal representative's deed from Rustan to Minex, but later determined that the deed was unambiguous and that the parol evidence rule barred consideration of the extrinsic evidence. The court concluded that the deed conveyed the Estate's working interest, including expenses, to Minex, and that the Estate had not breached any warranty. The court therefore dismissed Minex's claim against the Estate and dismissed all other claims by all parties. All parties appealed.

While the appeal was pending, Rustan died. Morland was appointed special administrator of the Estate and substituted as party to this litigation.

On appeal, we concluded that the trial court had erred in holding the deed unambiguous and in disregarding the extrinsic evidence. We reversed and remanded for further proceedings. *Minex Resources, Inc. v. Morland*, 467 N.W.2d 691 (N.D.1991).

On remand, before a different judge, the parties stipulated that no additional evidence would be offered. The district court issued findings of fact and conclusions of law based upon the record compiled at the original trial. The court found that the deed was ambiguous and that the Estate had conveyed only a net revenue interest, and not a working interest, in Mosser 1–26 to Minex. The court

also found that the Estate had warranted title. The court therefore concluded that the Estate was liable to Minex for the expenses Minex had been ordered to pay Chambers, including future expenses.

On the Estate's third-party claims, the court held that Patrick and Petrotech were equitably estopped from denying that Patrick had agreed to pay Kathleen's share of operating expenses on Mosser 1–26 after completion of the well. Accordingly, the court ordered that the Estate was entitled to indemnification for all expenses, current and prospective, it owed to Minex.[1] Patrick's counterclaim against the Estate for expenses paid by mistake, based upon Patrick's assertion that it was not responsible for expenses, was dismissed. On Petrotech's cross-claim against Patrick, the court held that Petrotech was entitled to indemnification for any sums it owed to the Estate and ordered Patrick to reimburse Petrotech's costs and attorney's fees in this litigation.

The Estate and Patrick appealed, raising numerous issues.

### Minex v. The Estate

The dispute between Minex and the Estate centers upon what interest in Mosser 1–26 was conveyed in the personal representative's deed. The parties agree that the characterization of their respective positions on this issue in Justice Meschke's opinion for the Court in *Minex, supra,* 467 N.W.2d at 696–697, is accurate:

"The Estate argues that, by transferring to Minex all of 'Grantor's working interest' in the six wells on the leasehold, including the Mosser 1–26, the Estate conveyed everything Kathleen owned including her working interest. The Estate reasons that 'net revenue interest' is the lessee's share

1. Although the judgment provides that Patrick is to indemnify the Estate, there is no similar provision specifically requiring Petrotech to indemnify the Estate for current and prospective expenses on Mosser 1–26. However, the judgment does provide that "Petrotech, Inc., [is] equitably estopped from denying the existence of the agreement of the parties whereby Patrick Petroleum and its assignee, Petrotech, Inc., would assume payment of all operating expenses attributable to the interest of Kathleen O'Connell in her working interest in the Mosser 1–26 oil and gas well." The judgment further provides that "Petrotech is entitled to be indemnified by Patrick Petroleum

from all liability for the claims of the Estate of Kathleen O'Connell as set forth in the Third Party Complaint of said Estate."

Although we might assume from the trial court's decision that the Estate is to be indemnified by Petrotech, the judgment in its present form is ambiguous as to whether Petrotech is ordered to indemnify the Estate for costs on Mosser 1–26. Because we are remanding for consideration of Petrotech's request for attorney's fees for this appeal, we direct the trial court to clarify the judgment on Petrotech's liability to the Estate.

of production after subtracting all overriding royalty, oil payments, and other nonoperating interests, so that the term includes the lessee's working-interest expenses as well as the net profit after those expenses are deducted. The Estate claims that the '-0-*' listed under 'Working Interest,' as explained by the referenced phrase, ' *Grantor's share of costs on Mosser 1–26 are paid by the operator,' was merely a means of informing Minex that there was a contractual duty owed by a third party to pay those expenses. The Estate contends that the payment of those expenses by Patrick was a beneficial contract right that was assigned to Minex by the granting language of the deed.

"Minex relies on the testimony of Rustan, the personal representative of the Estate, and of Dennis Tippets, president of Minex, for its definitions of 'net revenue interest' and 'working interest.' Both Rustan and Tippets testified to the effect that 'net revenue interest' meant the income from a well and that 'working interest,' as used in the agreement, meant the costs and expenses associated with a well. Minex argues that placement of the '-0-*' under the heading 'Working Interest' means that Minex did not acquire any working interest through the conveyance. Minex argues that the referenced phrase, ' *Grantor's share of costs on Mosser 1–26 are paid by the operator,' means that the working-interest expenses were not included in the conveyance because the expenses were being paid by the operator. Minex also relies on post-conveyance correspondence between the parties which indicates that expenses on the Mosser 1–26 were not Minex's responsibility." [Footnotes omitted].

■ We concluded in our prior opinion that the language of the deed was ambiguous, and remanded for resolution of the factual issue of the parties' intent. The trial court found that the parties intended that no working interest, but only a net revenue interest, in Mosser 1–26 would be transferred by the deed to Minex. Our review of that finding is governed by the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Dakota Grain Co. v. Ehrmantrout,* 502 N.W.2d 234 (N.D.1993). Rule 52(a) was recently amended to clarify that this standard applies when, as in this case, the findings are based upon documentary evidence. See Rule 52(a), N.D.R.Civ.P., and Explanatory Note.

■ We have previously, on this identical record, held that the deed was ambiguous and remanded for findings of fact on the parties' intent. We would not have remanded for resolution of this factual dispute if the evidence were such that only one conclusion could be drawn. A question of fact becomes a question of law if the evidence is such that reasonable minds could draw but one conclusion. *Wanner v. Getter Trucking, Inc.,* 466 N.W.2d 833 (N.D.1991); *Bjorgen v. Kinsey,* 466 N.W.2d 553 (N.D.1991).

■ The Estate stresses technical definitions of the terms "net revenue interest" and "working interest" to challenge the court's finding that the parties did not intend to transfer the working interest. The Estate, however, essentially ignores the testimony of Dennis Tippets, the president of Minex, and Rustan, the personal representative of the Estate at the time of this transaction. Their testimony supports the court's finding, as do two letters from Rustan written after the transaction had occurred. See *Johnson Construction, Inc. v. Rugby Municipal Airport Authority,* 492 N.W.2d 61 (N.D.1992) [court may consider parties' actions after entering into a contract to determine intent]; *Stracka v. Peterson,* 377 N.W.2d 580 (N.D.1985) [parties' conduct after deed's execution may be used to determine intent].

On this record, we are not left with a definite and firm conviction that a mistake has been made, and the court's finding that the parties intended to transfer a net revenue interest, and not a working interest with associated operating expenses, is not clearly erroneous.

### The Estate v. Patrick

Patrick asserts that the court erred in concluding that Patrick was to indemnify the Estate for any expenses payable to Minex.

### 1. Res Judicata

Patrick asserts that the judgment in the prior lawsuit between Chambers, Minex, and Petrotech is res judicata against the Estate on the issue of Patrick's responsibility for operating expenses on Mosser 1–26. Specifically, Patrick argues that the court's conclusion in that case that Petrotech, as Patrick's assignee, was liable for expenses only to completion of the well is binding upon the Estate, and precludes relitigation of that issue in this case.

Res judicata, or claim preclusion, prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies, and which were resolved by final judgment in a court of competent jurisdiction. *Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380 (N.D.1992). Neither Patrick nor the Estate was a party to the prior litigation. Accordingly, the Estate is only bound by the prior judgment if it was in privity with Minex.

We explained the requisites of privity in *Hofsommer, supra,* 488 N.W.2d at 384:

> "In general, privity exists if a person is 'so identified in interest with another that he represents the same legal right.' 46 Am.Jur.2d *Judgments* § 532, at p. 683 (1969) [Footnote omitted.] In *Stetson [v. Investors Oil, Inc.,* 176 N.W.2d 643, 651–652 (N.D.1970) ] we said:
>
> > " 'The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies, is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by prosecution of the action, employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, the taking of an appeal, or the doing of such other acts as are generally done by parties.' [Quoting 46 Am. Jur.2d, *supra,* § 535 at pp. 688–690.]

"Fundamental fairness underlies any determination of privity. *Bismarck Public School District No. 1 v. Hirsch,* 136 N.W.2d 449, 453–454 (N.D.1965)."

There can be little doubt that Minex and the Estate had differing interests, and that Minex did not represent the "same legal right." Patrick has failed to present a cogent argument that the Estate was in privity with Minex, and that Minex represented the "same legal right" in defending the prior lawsuit. Accordingly, the Estate is not bound by the prior judgment.

### 2. Equitable Estoppel

The trial court determined that Patrick was equitably estopped from denying that the letter agreement between Patrick and Kathleen required Patrick to pay operating expenses on Kathleen's working interest after completion of Mosser 1–26. Patrick asserts that the court erred in applying equitable estoppel in this case.

Equitable estoppel is codified at Section 31–11–06, N.D.C.C.:

> "*Estoppel by declaration, act, or omission.*—When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

We have characterized equitable estoppel as "the loss of a right or property because of acts or representations inconsistent with the right which are relied on by another to his detriment." *Cranston v. Winters,* 238 N.W.2d 647, 650 (N.D.1976). We have on numerous occasions delineated the elements of equitable estoppel:

> " 'Based as it is upon a consideration of the facts in light of equitable considerations, public policy, fair dealing, and the like, the basic elements of an equitable estoppel, insofar as it relates to the person being estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those

which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts. Insofar as related to the party claiming the estoppel, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.'"

*Farmers Cooperative Association of Churchs Ferry v. Cole*, 239 N.W.2d 808, 813 (N.D. 1976), quoting Robert A. Brazener, Annotation, *Comment Note—Promissory Estoppel as Basis for Avoidance of Statute of Frauds*, 56 A.L.R.3d 1037, 1041–1042 (1974). *See also In re Estate of Helling*, 510 N.W.2d 595 (N.D.1994); *O'Connell v. Entertainment Enterprises, Inc.*, 317 N.W.2d 385 (N.D.1982).

Patrick argues that it made an innocent "mistake" in paying the operating expenses for Mosser 1–26 after completion of the well on April 12, 1979, and that such a "mistake" should not give rise to equitable estoppel. The facts in this record, however, do not support Patrick's assertion of an innocent mistake, but rather suggest a change of heart by Patrick after Petrotech complained and this litigation was commenced.

The record demonstrates that Patrick had several opportunities to learn of its "mistake" in the period between completion of the well in April of 1979 and Petrotech's refusal to pay expenses in April 1984, and each time Patrick continued paying the expenses. For example, a December 14, 1979 interoffice memorandum between two Patrick executives, regarding Kathleen's working interest on Mosser 1–26, states: "we agreed to carry them on the drilling and completion of the well with [O'Connell] reserving a right to have a carried working interest." [2] A further notation on the bottom of the memo questions the accuracy of the working interest figures, and a Patrick vice-president testified that the working interest figures were then reviewed to determine their accuracy. Patrick continued paying Kathleen's share of operating expenses for four years after that in-house review. That hardly suggests a "mistake" in paying the expenses.

Furthermore, when Minex and the Estate objected to an expense billing in 1983, Axem contacted Patrick and was informed that the billing to Kathleen was incorrect, and that Patrick had agreed to "carry [Kathleen] on this well regardless of payout." Even when this specific question regarding expenses on the Estate's working interest was raised, Patrick did not challenge its duty to pay those expenses, and Patrick's assignee, Petrotech, paid the expenses for several months thereafter. Again, we find the evidence to be wholly inconsistent with Patrick's claim of mistake, and strongly suggestive of a subsequent change in tactics by Patrick.

Under these circumstances, we believe the record supports the trial court's findings of the essential elements of estoppel. Patrick's conduct conveyed an impression that the facts were otherwise than what it now attempts to assert; Patrick had, at the least, an expectation that the Estate would act upon or be influenced by that conduct; Patrick had actual or constructive knowledge of the true facts; Rustan, as personal representative of the Estate, lacked knowledge of the facts now asserted by Patrick; the Estate, through Rustan, relied in good faith upon Patrick's conduct when it sold a net revenue interest to Minex and represented that Patrick was responsible for expenses; and, by the sale to Minex, the Estate changed its position to its detriment. We conclude that the trial court did not err in concluding that Patrick was equitably estopped from denying

2. A "carried interest" is defined in Williams and Meyers, Manual of Oil and Gas Terms 148 (1991):

"A fractional interest in oil and gas property, usually a lease, the holder of which has no personal obligation for operating costs, which are to be paid by the owner or owners of the remaining fraction, who reimburse themselves therefor out of production, if any. The person advancing the costs is the carrying party and the other is the carried party."

that the letter agreement required Patrick to pay the disputed operating expenses on Mosser 1–26.

### *Petrotech v. Patrick*

Patrick asserts that the court erred in awarding costs and attorney's fees to Petrotech pursuant to the hold-harmless clause in their agreement. We have considered Patrick's arguments on this issue and find them to be without merit.

 Petrotech has requested that we remand this case to the trial court for an award of attorney's fees for this appeal. We have previously recognized that, where attorney's fees are awarded pursuant to an indemnification agreement, the principle of nondilution of recovery may require an award of attorney's fees on appeal as well. *Hoge v. Burleigh County Water Management District,* 311 N.W.2d 23 (N.D.1981).

The other issues raised by the parties are without merit and we will not address them. The judgment is affirmed, and we remand for consideration of Petrotech's request for attorney's fees on this appeal and for clarification of the judgment regarding Petrotech's liability to the Estate.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.