# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-1664

———————

Burlington Northern Railroad     \*
Company,     \*
    \*
       Appellee,     \*
    \*   Appeal from the United States
    v.     \*   District Court for the
    \*   District of North Dakota.
Farmers Union Oil Company of Rolla,     \*
a Corporation,     \*
    \*
       Appellant.     \*

———————

Submitted: December 13, 1999

Filed: March 28, 2000

———————

Before WOLLMAN, Chief Judge, McMILLIAN, Circuit Judge, and BATTEY,[1]
District Judge.

———————

WOLLMAN, Chief Judge.

Farmers Union Oil Company (Farmers Union) and Burlington Northern Railroad
Company (BN) are parties to an industrial track lease agreement that contains an
indemnity clause that requires Farmers Union to indemnify BN for certain losses that

———————

[1]The Honorable Richard H. Battey, United States District Judge for the District
of South Dakota, sitting by designation.

BN suffers. The district court[2] determined that this clause was triggered by an accident that occurred near Farmers Union's leased premises, and it therefore ordered Farmers Union to pay BN $200,000 in indemnity and $75,302.83 in attorney fees and costs. Farmers Union appeals, and we affirm.

## I.

BN owns and operates railroad tracks near Rolla, North Dakota. Along a spur of these tracks, Rolla Cooperative Grain Elevator (Rolla Grain) maintains three grain storage units. Also along this spur, and immediately adjacent to Rolla Grain's facilities, Farmers Union operates a fertilizer plant. Both Farmers Union and Rolla Grain entered into track lease agreements with BN. The agreements contain identical indemnity clauses that provide:

> Lessee also agrees to indemnify and hold harmless Lessor for loss, damage, injury or death from any act or omission of Lessee, Lessee's invitees, licensees, employees, or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation while on or near said premises; and if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto,it shall be borne by them equally.

At issue in this case is whether an accident that occurred near Farmers Union's leased premises on April 13, 1987, triggered the indemnity clause within Farmers Union's lease agreement.

---

[2]The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota, to whom the case was submitted pursuant to the consent of the parties under 28 U.S.C. § 636(c).

-2-

Sometime between April 9 and April 12, 1987, Farmers Union received two railroad cars carrying fertilizer. While unloading the cars, Farmers Union employees noticed that the brake on one of the cars was sticking. The employees did not notify BN of the defect, but they did warn Fred Roy, a Rolla Grain employee, about the brake. Roy had come to Farmers Union to transport the two empty cars to Rolla Grain, where they would be loaded with grain, as was commonly done with cars received and emptied by Farmers Union. Roy transported and filled the two cars without incident. Shortly thereafter, BN delivered 26 or 27 empty cars to Rolla Grain. One or two of the cars were coupled on one end of the cars Roy had received from Farmers Union and the remainder were coupled on the other end.

The following Monday, Roy and Teddy Cahill, another Rolla Grain employee, began loading the empty cars that BN had delivered. To do so, Cahill positioned himself on the top of the cars, while Roy remained on the ground and rolled the cars forward once they were filled. After filling and moving one or two of the empty cars, Roy had difficulty with the brake on the next car, which was numbered FLIX12331 (the FLIX car). BN contends that this troublesome car was one of the two cars that Rolla Grain had received from Farmers Union and which Roy had filled a few days earlier. Farmers Union, in contrast, asserts that the FLIX car was one which BN had delivered directly to Rolla Grain. In any event, Roy asked Cahill to come down and help him release the brake. After doing so, and as he was attempting to resume his position atop the empty cars, Cahill slipped and fell under another car that Roy had started to roll down the tracks, suffering severe injuries as a result.

Cahill sued BN, claiming that it had supplied a defective car and that this car was a significant cause of his injuries. BN tendered defense of Cahill's suit to Farmers Union on the theory that its failure to notify BN of the faulty brake constituted an act or omission that triggered the lease's indemnity clause. BN also tendered defense to Rolla Grain. Both parties declined the tender. BN then settled with Cahill for

-3-

$400,000 and sought $200,000 each from Farmers Union and Rolla Grain.  Farmers Union refused to pay, whereupon BN instituted this diversity action.

The district court granted summary judgment in favor of Farmers Union after finding that the Cahill accident did not occur "on or near" Farmers Union's property, as is required to trigger the indemnity clause.  We reversed, finding that the accident did occur near the leased premises, and remanded for a determination as to whether the other predicates for triggering the indemnity clause--an "act or omission" by Farmers Union that caused Cahill's injury--had occurred.  See Burlington Northern R. Co. v. Farmers Union Oil Co., 114 F.3d 705, 707 (8th Cir. 1997) (Burlington Northern I). Based on a written record submitted by the parties, the district court on remand concluded that an act or omission by Farmers Union had caused Cahill's injury.  The court ordered Farmers Union to pay BN $200,000 in indemnity and $75,302.83 in attorney fees and costs.  This appeal followed.

## II.  The Indemnification Award

### A.  BN's Right to Indemnification

A lessee's obligation to indemnify a railroad under a track lease agreement "is a contractual duty and not a duty arising under the common law of tort."  Burlington Northern, Inc. v. Bellaire Corp., 921 F.2d 760, 763 (8th Cir. 1990) (quoting Burlington Northern, Inc. v. Hughes Brothers, Inc., 671 F.2d 279, 284 (8th Cir. 1982)).  Thus, to recover under the indemnity agreement, BN need not prove that Farmers Union was negligent.  See Bellaire, 921 F.2d at 763.  Rather, BN must establish, in accordance with the terms of the agreement, that an "act or omission" by Farmers Union caused or contributed to cause the accident in which Cahill was injured.  See id. (interpreting a similar indemnity agreement); Missouri Pac. R. Co. v. International Paper Co., 618 F.2d 492, 496 (8th Cir. 1980).

The district court found that the FLIX car was one of the two cars that had been delivered to Farmers Union a few days prior to the accident. The court also found that Farmers Union's failure to notify BN of this car's defective brakes constituted an act or omission that contributed to Cahill's injury, thereby triggering the indemnity clause. We review the district court's factual findings for clear error, see Consol. Elec. & Mech., Inc. v. Biggs Gen. Contracting, Inc., 167 F.3d 432, 434 (8th Cir. 1999), and its interpretation of the indemnity clause, which is governed by North Dakota law, de novo, see Burlington Northern I, 114 F.3d at 707.

Farmers Union first argues that the district court erred in finding that the FLIX car was one of the cars that Farmers Union had handled prior to the accident. Although there exists conflicting evidence regarding the origin of the FLIX car, we cannot say that the court's conclusion is clearly erroneous, as it is supported by the testimony of the three individuals most knowledgeable of the Cahill accident. Most notably, Roy, the only person who saw both the defective car received by Farmers Union and the car involved in the Cahill accident, testified that he was certain that the troublesome car on both occasions was the FLIX car. In addition, Cahill stated that the FLIX car was already loaded when he and Roy came to work on April 13 and thus that the FLIX car must have been one of the cars that they had received from Farmers Union. Finally, Roy's and Cahill's supervisor, Mike Guderjahn, testified that, based on the amount of time that it takes to load a car and how long Cahill and Roy had been at work on April 13, the FLIX car had to have been loaded prior to that day.

Farmers Union asserts that these individuals' testimony is rendered incredible by certain business records of Farmland Industries, an unrelated third party, that suggest that the FLIX car may have been one of the cars delivered directly to Rolla Grain. We conclude, however, that although they are not insignificant, these records do not so compellingly cast into doubt the unequivocal testimony of Roy, Cahill, and Guderjahn as to render clearly erroneous the district court's findings regarding the FLIX car. See First Nat'l Bank, Sioux Falls v. First Nat'l Bank, South Dakota, 153

F.3d 885, 890 (8th Cir. 1998) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)).

Farmers Union next argues that, even if the FLIX car had passed through its control, it had no duty under the terms of the lease agreement to notify BN of the defective brake and therefore its failure to do so did not constitute an act or omission under the indemnity clause. We disagree. The primary purpose of an indemnity clause such as is at issue here is to indemnify a railroad when its lessee's act or omission causes the railroad to violate its non-delegable duty to furnish a safe workplace under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq. See Bellaire, 921 F.2d at 763; Hughes Brothers, 671 F.2d at 284. Accordingly, the inquiry into whether an act or omission has occurred does not focus primarily on the lessee's duties to the railroad, but rather on the railroad's duty to provide a safe workplace. See Bellaire, 921 F.2d at 763 ("The phrase 'act or omission' includes any act or omission which constitutes a violation of the railroad's duty to provide a safe workplace, and thus, subjects it to liability under FELA.") (quoting Hughes Brothers, 671 F.2d at 284). Farmers Union is therefore chargeable with an act or omission under the indemnity agreement if through its action or inaction it jeopardizes the safety of the work environment for which BN is responsible and, in so doing, exposes BN to potential liability under FELA. See Bellaire, 921 F.2d at 763.

BN has a duty under the Federal Safety Appliance Act (FSAA) to ensure that the cars used on its tracks are equipped with properly functioning brakes, see 45 U.S.C. § 11, and its failure to do so creates an unsafe workplace in violation of FELA, see Grogg v. Missouri Pac. R. Co., 841 F.2d 210, 212 (8th Cir. 1988). Farmers Union, accordingly, has a duty under the indemnity clause to assist BN in ensuring that all cars on its tracks are equipped with effective brakes. By failing to notify BN of the FLIX car's defective brake, Farmers Union breached this duty and exposed BN to possible

liability under FELA. Thus, an act or omission has occurred.[3] See Bellaire, 921 F.2d at 764 (finding that lessee had duty under indemnity clause to tighten car's brakes or determine why it rolled while its brake was set, and that its failure to do so was an act or omission).

Farmers Union also contends that even if its failure to notify BN of the defective brake constituted an act or omission, this act or omission did not cause Cahill's injury and thus did not trigger the indemnity clause. We again disagree. Because causation under an indemnity agreement such as this is not based on principles of negligence, BN is not required to show that Farmers Union's failure to notify BN of the FLIX car's faulty brake was the proximate cause of Cahill's accident, but only that it "caused or contributed to cause the accident." See Bellaire, 921 F.2d at 763. In Bellaire, we held that a lessee who knew that a car's brake was either not set or not functioning properly but who failed to take any action to remedy the situation was the cause of a fatal accident that occurred the following day. See id. at 764. The same can be said of this case: Farmers Union knew that the FLIX car's brake was defective but yet took no action to rectify the problem, even though a simple notification to BN could have led to the repairing of the brake, the decommissioning of the car, or the taking of other corrective action, the default of which resulted in Cahill's injuries. We therefore conclude that the district court properly found that Farmers Union's failure to notify BN of the FLIX car's defective brake caused or contributed to cause the Cahill accident

_____

[3]Although Cahill's suit against BN was based on common law negligence and not FELA, we do not believe that this fact alters our analysis of Farmers Union's obligations under the indemnity clause. The fact remains that Farmers Union's failure to notify BN of the FLIX car's defective brake exposed BN to potential liability under FELA. Therefore, an act or omission occurred and Farmers Union is required to indemnify BN for any liability resulting from that act or omission, whether such liability is based on FELA or principles of negligence. See generally International Paper, 618 F.2d at 496.

and that Farmers Union is thus required to indemnify BN under the terms of the indemnity clause.

## B. The Amount of Indemnification

We next must determine the amount of indemnification to which BN is entitled. See Bellaire, 921 F.2d at 763. The indemnity clause provides that "if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally." In Bellaire, we interpreted this language to mean that, even if an indemnity clause has been triggered, a "railroad may only recover one-half of its liability if 'the [lessee] can prove that the railroad was negligent and its negligence contributed to the injury.'" See 921 F.2d at 763 (quoting Hughes Brothers, 671 F.2d at 284). The district court concluded that BN was entitled to $200,000 in indemnification from Farmers Union, reasoning that this amount was proper even if BN was negligent because it represents one-half of the $400,000 that BN paid to Cahill. We agree with the court's conclusion, but not its reasoning.

The district court overlooked the fact that BN had already received $200,000 in indemnification from Rolla Grain prior to the commencement of BN's action against Farmers Union. Thus, the "loss" for which Farmers Union has an obligation to indemnify BN under the terms of the indemnity clause is no longer $400,000, but rather $200,000. We therefore believe that $200,000 is the maximum amount of indemnification that BN can recover from Farmers Union and that it is this amount that is subject to a one-half reduction if BN negligently contributed to cause the Cahill accident. To hold otherwise would permit BN to receive full indemnification-- $200,000 from both Farmers Union and Rolla Grain--even if it were found to be negligent, a result inconsistent with the terms of the indemnity clause and the reasoning of Bellaire. See 921 F.2d at 763.

That being said, we nonetheless affirm the district court's award of $200,000 because the record contains insufficient evidence to support a finding that BN was negligent. It is well established that we can affirm the district court on any ground supported by the record, even if not relied upon by the district court. See Dominium Management Serv., Inc. v. Nationwide Housing Group, 195 F.3d 358, 367 (8th Cir. 1999); Monterey Dev. Corp. v. Lawyer's Title Ins., Corp., 4 F.3d 605, 608 (8th Cir. 1993). Here, neither the joint statement of facts, the stipulated record, nor Farmers Union's separate offer of proof puts forth evidence that indicates any negligence by BN.

Farmers Union points to the fact that BN may have violated the FSAA by permitting Rolla Grain to use a car with a defective brake and argues that this fact demonstrates BN's negligence. Even assuming that BN violated the FSAA, however, a violation of this statute does not, by itself, support a finding of negligence. See Colorado Milling & Elevator Co. v. Terminal R. Ass'n of St. Louis, 350 F.2d 273, 276 (8th Cir. 1965) ("[T]he ruling of the Supreme Court conclusively indicates that a violation of the [FSAA] does not imply that negligence . . . was involved.") (citing several Supreme Court cases). In Colorado Milling, for example, we held that a railroad was entitled to full indemnification even though it had violated the FSAA by allowing a lessee to use a car with a defective brake. See id. at 277. We reasoned that the FSAA violation alone was not sufficient evidence of the railroad's negligence and that the lessee had not presented other evidence of negligence: it had not shown that the railroad could have detected the defective brake by inspection or that the defect arose prior to the railroad's delivery of the car to the lessee. See id. Farmers Union has similarly failed to present such evidence, or any other evidence tending to establish negligence on behalf of BN. Cf. Deans v. CSX Transp., Inc., 152 F.3d 326, 330 (4th Cir. 1998) (granting summary judgment on plaintiff's FELA claim because plaintiff introduced no evidence that railroad had notice of car's defective brake prior to the accident, or that railroad's inspection of car would have revealed the defect).

We therefore conclude that the record contains insufficient evidence to support a finding that BN was negligent regarding the Cahill accident. As a result, BN is entitled to $200,000 in indemnification from Farmers Union.

## II. The Attorney Fee Award

The district court ruled that, as part of Farmers Union's obligation under the indemnity clause, it must pay BN for the attorney fees that BN incurred on the Cahill litigation after October 29, 1992, the date at which BN properly tendered defense of the suit to Farmers Union. Because state law governs the availability of attorney fees in diversity cases where no conflicting federal statute or court rule applies, we apply North Dakota law to this issue. See Grabinski v. Blue Springs Ford Sales, Inc., Nos. 98-4005/4210, 2000 WL 175162, at *3 (8th Cir. Feb. 16, 2000). We review the court's interpretation of state law de novo, see St. Paul Fire & Marine Ins. Co. v. Schrum, 149 F.3d 878, 880 (8th Cir. 1998), and its decision to award attorney fees for an abuse of discretion, see Dodson v. Woodmen of the World Life Ins. Soc'y, 109 F.3d 436, 440 (8th Cir. 1997).

Farmers Union first contends that the terms of the indemnity clause do not support an award of attorney fees to BN. We disagree. The general rule in North Dakota is that attorney fees are recoverable when provided for by contract or statute. See Hoge v. Burleigh City Water Management Dist., 311 N.W.2d 23, 31 (N.D. 1981). An indemnity clause that does not specifically refer to attorney fees provides a sufficient contractual basis for an award of attorney fees, provided the terms of the clause are sufficiently broad to evidence an intent that the clause encompass a wide-range of losses. See id. at 31; compare Minex Resources, Inc. v. Morland, 518 N.W.2d 682, 684-85, 689 (N.D. 1994) (affirming attorney fee award under "hold harmless" provision of indemnity clause) with Barsness v. Gen. Diesel & Equip. Co., 422 N.W.2d 819, 825-27 (N.D. 1988) (disallowing attorney fees under restrictive indemnity clause that limited indemnity to losses arising from specified acts). Because

the indemnity clause at issue here provides that Farmers Union will indemnify BN for losses resulting from "any act or omission" of Farmers Union, we are convinced that the terms of the clause are sufficiently comprehensive to support an award of attorney fees.

Farmers Union next contends that the district court abused its discretion in awarding BN attorney fees because BN's tender of defense of the Cahill suit was untimely. To supports its claim, Farmers Union relies upon Diebold, Inc. v. Roadway Express, Inc., in which a Minnesota court found that a tender of defense four weeks prior to trial was untimely because it deprived the party to whom defense was tendered the "opportunity to participate in the litigation." 538 N.W.2d 150, 152 (Minn.App. 1995). Here, Farmers Union had ample time to effectively participate in the Cahill suit. BN tendered defense of the suit to Farmers Union more than one year before summary judgment motions were filed and the case was settled. Furthermore, at the time of tender BN had incurred only $14,656 of the $89,958 in attorney fees that it incurred in the Cahill action. Farmers Union therefore had the opportunity to become involved in the Cahill suit early in the litigation and in sufficient time to protect its interests. See, e.g., Acceptance Ins. Co. v. SDC, Inc., 952 F. Supp. 644, 647 (E.D. Mo. 1997); Ford Motor Co. v. Bendix Corp., 268 N.W.2d 305, 307 (Mich.App. 1978). Accordingly, we believe that the district court did not abuse its discretion in awarding BN attorney fees and costs.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-